WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Edward Blum and Nancy Blum,<br><br>Plaintiffs,<br><br>v.<br><br>Samuel Duran, Jr., et al.,<br><br>Defendants. | No. CV-13-00966-PHX-GMS<br><br>**ORDER** |
|---|---|

Pending before the Court are Defendant Medical Protective Company's Motion to Dismiss, (Doc. 15), and Motion to Stay Ruling on Motion to Dismiss Until Deadline for Filing Second Amended Complaint, (Doc. 18). For the following reasons, the Motion to Stay Ruling and the Motion to Dismiss are granted.[1]

## BACKGROUND

This case arises out of negligent dental care which allegedly caused serious injuries to a patient. Plaintiff Edward Blum visited Defendant Dr. Samuel Duran, Jr., to replace a lost dental filling in March and April of 2011.[2] (Doc. 20, Second Am. Compl. at 2.) During the second visit, Dr. Duran broke Mr. Blum's tooth and then recommended a

---

[1] The request for oral argument by Defendant Medical Protective Company is denied because the Parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir.1991).

[2] The Court takes as true the allegations contained in Plaintiffs' Second Amended Complaint at this stage of the litigation. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

1 root canal and crown. (*Id.* at 3.) In May, Mr. Blum returned to Dr. Duran, but Dr. Duran
2 mistakenly operated on the wrong tooth. (*Id.*) Later that month, Dr. Duran operated on
3 the correct tooth but did not adequately medicate Mr. Blum and continued to work
4 despite Mr. Blum's objections that he was in pain. (*Id.* at 5.)

5     Following these procedures, Mr. Blum experienced debilitating pain and he went
6 to the emergency room twice on May 29 to receive pain medication. (*Id.* at 6–7.) Mr.
7 Blum's health worsened dramatically and he was transported to the hospital with a high
8 fever and elevated heart rate. (*Id.* at 7.) The attending doctors diagnosed Mr. Blum with
9 septic shock and determined that the dental work had caused an infection that spread
10 throughout his body. (*Id.* at 7–8.) Mr. Blum spent three days in intensive care and six
11 weeks confined to his home while he received intravenous antibiotics. (*Id.* at 8–9.)

12     The Blums brought this action on May 10, 2013. (Doc. 1.) They filed a Second
13 Amended Complaint (the "SAC") on July 29. (Doc. 20.) They seek compensatory and
14 punitive damages for Negligence against Dr. Duran and Defendant Medical Protective
15 Company ("MedPro"). (*Id.* at 9–10.)  MedPro is the company that insured Dr. Duran
16 during the time of the conduct at issue. (*Id.* at 2.)

17 **DISCUSSION**

18     MedPro's Motion to Stay Ruling asks the Court to delay ruling on the Motion to
19 Dismiss until the Blums filed the SAC or the deadline to do so had past. (Doc. 18 at 1.)
20 MedPro further asks that the Court apply the Motion to Dismiss to whatever complaint is
21 controlling. (*Id.*) The Blums filed the SAC on July 29, 2013. (Doc. 20.) The Court grants
22 the Motion to Stay Ruling and now considers MedPro's Motion to Dismiss as applied to
23 the SAC.

24 **I.     LEGAL STANDARD**

25     Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v.*
26 *Block,* 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim
27 pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than
28 "labels and conclusions" or a "formulaic recitation of the elements of a cause of action";

it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Igbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Twombly,* 550 U.S. at 555. Accordingly, a plaintiff must do more than employ "labels," "conclusions," or a "formulaic recitation of the elements of a cause of action." *Id* .

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998).

**II.   DIRECT ACTIONS AGAINST INSURERS**

In Arizona, "an injured person has no direct cause of action against a tortfeasor's insurance company." *Nationwide Mut. Ins. Co. v. Ariz. Health Care Cost Containment Sys.*, 166 Ariz. 514, 518, 803 P.2d 925, 929 (Ct. App. 1990). Direct actions against insurers are only permitted if the injured party has obtained an assignment of the insured's rights. *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 35, 708 P.2d 457, 460 (Ct. App. 1985). This is because the insured, not the injured party, is the one in a fiduciary relationship with the insurer and the one that is harmed by an insurer's bad faith. *Id.*

The Blums bring state law claims of Negligence. But MedPro is Dr. Duran's

insurer and only he can maintain a direct action against it under Arizona law. The SAC fails to state a claim against MedPro because the Blums do not allege that Dr. Duran assigned his rights to them. Further, the SAC contains no allegations of misconduct by MedPro. The Blums allege bad faith in their Response to the Motion to Dismiss, (Doc. 17 at 2), but even if these allegations were incorporated into a third amended complaint, an assignment of rights would still be required.

MedPro's also requests the costs and fees related to the Motion to Dismiss because it asserts that the Blums' direct claim against it is "blatantly frivolous." (Doc. 15 at 5.) While the Court rejects the Blums' argument for direct action, it is a nonfrivolous argument for the modification or reversal of existing law. *See* Fed. R. Civ. P. 11(b)(2). The request for costs and fees against the Blums, who are proceeding pro se, is denied.

**IT IS THEREFORE ORDERED** that Defendant Medical Protective Company's Motion to Dismiss, (Doc. 15), is **granted**. The Clerk of the Court is directed to terminate Defendant Medical Protection Company from this action.

**IT IS FURTHER ORDERED** that the Defendant Medical Protection Company's Motion to Stay Ruling on Motion to Dismiss Until Deadline for Filing Second Amended Complaint, (Doc. 18), is **granted**.

Dated this 2nd day of October, 2013.

*[signature: A. Murray Snow]*
G. Murray Snow
United States District Judge