WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Blum and Nancy Blum,<br><br>    Plaintiffs,<br><br>v.<br><br>Samuel Duran, Jr., et al.,<br><br>    Defendants. | No. CV-13-00966-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. 34.) Also before the Court is the related Plaintiffs' Motion to Enforce Federal Rules of Civil Procedure. (Doc. 37.) For the following reasons, the Motion to Dismiss is denied and the Motion to Enforce is dismissed as moot.

## BACKGROUND

**I.    Procedural History**

Edward Blum and Nancy Blum filed this dental malpractice action on May 10, 2013. (Doc. 1.) Despite an enlargement of time (Doc. 16) and what this Court determined to be a "due diligent effort to locate and serve Dr. Duran," the Blums, who are proceeding pro se, were unable to serve him, and this Court granted permission to effectuate service by mail (Doc. 26). The Court also found at that time that "Dr. Duran's current address is unknown and his last known address was outside of Arizona in Texas." (*Id.*)

On September 26, 2013 the Counsel for former Defendant Medical Protective Company assured this Court that Counsel was not aware of Duran's whereabouts, had not

been hired by him, and not authorized by him to accept service. (Doc. 24.) Medical Protective Company's Counsel also sent a letter to the Plaintiffs stating that Duran's whereabouts were "unknown to Medical Protective, but last word was that he was practicing in Texas. I would assume a quick Google search on your end would likely provide the latest information on Dr. Duran." (Doc. 15-1 at 4.)

On December 3, 2013, Plaintiffs filed a Notice of Service and Request to Clerk to Enter Default on the Record (Doc. 27) which the Clerk of the Court granted on December 5 (Doc. 28). Within four days of the entry of default judgment the same Counsel, now representing Duran, filed a motion. (Doc. 29.) This motion argued that Duran had not been served properly and also raised the legal argument for lack of jurisdiction that is at issue here. (*Id.*) This Court set aside the default judgment. (Doc. 32.) On January 5, 2014, Plaintiffs were finally able to serve Duran through his Counsel. (Doc. 33.)[1]

Duran, through his Counsel, moved for the case to be dismissed for lack of subject matter jurisdiction because of a lack of diversity of citizenship. (Doc. 34.) The Plaintiffs Responded (Doc. 35) and Duran replied (Doc. 36). The Court ordered an evidentiary hearing because although Duran's Motion raised the possibility that this Court might not have jurisdiction, the Court found the briefing to be inadequate. At the evidentiary hearing on March 17, 2014, the Court began by stating that the Blums had made a prima facie showing that Duran was a citizen of Texas at the time the complaint was filed for diversity purposes. The Court then gave Duran an opportunity to rebut that finding by providing additional evidence beyond the inadequate information he had presented in his briefing. The Court heard arguments from Duran's counsel and testimony from Duran. At the end of the hearing the Court informed the parties that the Motion to Dismiss would be denied for reasons that would be explained in this order.

---

[1] The Court acknowledges counsel's representations as to the course of events that resulted in her subsequent acceptance of service for her client and means to suggest no impropriety on counsel's part in representing Mr. Duran after he was appropriately located by counsel.

## II. Facts Related to Diversity of Citizenship

The parties agree that the Blums are citizens of Arizona, but do not agree as to the citizenship of Duran. Duran is from Texas and has family there. Duran acknowledged that he held a Texas driver's license from the time he was a teenager until January 21, 2014, when he obtained the Arizona Driver License with a PO Box address that he submitted as an exhibit with his Motion to Dismiss on January 27, 2014. (Doc 34-1.) The Blums allege that on April 16, 2013, less than a month before this lawsuit was filed, Duran participated in a presentation in Texas with his daughter who is studying to for a career in the dental field. The Court asked Duran about this, and he acknowledged that his daughter was in school but did not respond further.

Duran graduated from Baylor dental school in Texas in 1994. He held a dental license in Texas from 1994 through 2006 and then again from 2008 through the present.[2] The current contact information for Duran on the Texas dental license site identifies an address in Texas. The Blums allege that while they have been attempting to locate and serve Duran, the contact address on his dental license has been changed repeatedly to different addresses in Texas. Although Duran has also held dental licenses in Arizona and Utah, the process server who attempted to locate Duran at the time this suit was filed found that both of those licenses had expired. (Doc. 22 at 10.) Duran presented no additional information about either of those dental licenses at the hearing.

Duran's testimony at the hearing was evasive, non-specific, and was often contradicted by other evidence. He attempted to testify that he has been semi-retired and living for years at a little ranchette near Snowflake, Arizona. He does not own or rent the ranchette, but a family member lets him stay there. He could not give an exact date or even a consistent year that he began to live there, sometimes stating 2010, but later stating that it was for sure by 2011. Yet he offered no explanation about why he had not

---

[2] The information from the Texas State Board of Dental Examiners submitted in the briefing showed Duran's license as expired in November 2013. At the hearing, Mr. Blum presented an updated version that showed the license was now renewed and Duran acknowledged that his Texas dental license was now active again.

- 3 -

obtained an Arizona driver license until less than two months ago. At other times he testified that he had been trying to live there or trying to retire to there for some time.

Duran testified that he worked at two locations for Sunwest Dental Group in Arizona but did not provide dates for when he began or ended work there. When asked where he lived while working in Sun City he said that he rented a room from a lady during the week and would return to the ranchette on the weekends. Duran was unable to identify the name of the person he rented the room from, or even the city in which the room was located. He offered no explanation about why Sunwest told the Blums that Duran had moved to Texas to practice dentistry after leaving its employment. He said that he told the people at Sunwest he was living at his ranchette in Arizona and they must have been guessing about him working in Texas.

Duran acknowledged that he is the owner of a dental practice in Texas. Texas apparently requires all dental practices be owned by a licensed dentist, and Duran described himself as the dentist of record who officially owns the practice even though it is managed and run by his family, primarily a brother-in-law. Duran claims that other dentists were hired to perform most of the work there but he acknowledged that he has been working there as well. He testified that he would interview the other dentists before they were hired and was responsible for their work as the owner. However, he said that there were a lot of them and he did not remember the full names of any of them. Duran stated in his affidavit that he would visit Texas "periodically as required" and at the hearing he said he worked there a couple or a few days per month.

Duran was asked about his home in Utah where he may have lived and worked during some of the time period that he claimed to be living on the ranchette in Arizona. He acknowledged that the home was repossessed by the bank, but was defensive and offered no explanation about when he lived or worked there.

Duran's affidavit stated that he, in the past tense, "had a business interest in Texas and visited the practice periodically as required," but his testimony at the hearing indicates that he still has the same interest and continues to be involved with it. (Doc. 36-

1.) The same affidavit stated that he "never intended to live in Texas" even though he acknowledges that he is from there, the evidence shows that he went to dental school there, and has held a dental license there for all but two-and-a-half of the past twenty years since he graduated. His former employer, his malpractice insurer, and his current counsel had all contacted him regarding this claimed malpractice and they were all under the impression that he was living and working in Texas.

## DISCUSSION

**I.     Legal Standard**

District courts have original jurisdiction of all civil actions between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a) (2005). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the Court presumes lack of jurisdiction until Plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

For diversity jurisdiction to exist, there must be "complete diversity" of citizenship between the two sides of the litigation. *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 704 (1972). Citizenship for diversity purposes is determined at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). A party demonstrates citizenship by showing that the person is a citizen of the United States and domiciled in a state. *Id.* A person establishes a domicile when that person has a "fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Id.* at 749–50 (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)).

A person does not lose an old domicile until a new one is acquired by "the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* at 750. Courts may determine a person's domicile by looking at a number of factors, none of which are controlling. *Id.* Those factors include "current

1.) The same affidavit stated that he "never intended to live in Texas" even though he acknowledges that he is from there, the evidence shows that he went to dental school there, and has held a dental license there for all but two-and-a-half of the past twenty years since he graduated. His former employer, his malpractice insurer, and his current counsel had all contacted him regarding this claimed malpractice and they were all under the impression that he was living and working in Texas.

## DISCUSSION

**I.     Legal Standard**

District courts have original jurisdiction of all civil actions between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a) (2005). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the Court presumes lack of jurisdiction until Plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

For diversity jurisdiction to exist, there must be "complete diversity" of citizenship between the two sides of the litigation. *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 704 (1972). Citizenship for diversity purposes is determined at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). A party demonstrates citizenship by showing that the person is a citizen of the United States and domiciled in a state. *Id.* A person establishes a domicile when that person has a "fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Id.* at 749–50 (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)).

A person does not lose an old domicile until a new one is acquired by "the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* at 750. Courts may determine a person's domicile by looking at a number of factors, none of which are controlling. *Id.* Those factors include "current

residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id.* The emphasis of the Court's evaluation is on "objective facts," and therefore "'statements of intent are entitled to little weight when in conflict with facts.'" *Id.* (quoting *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)).

## II.  Application

Here, the Blums met their burden to establish a diversity of citizenship by showing that they are citizens of Arizona and that at the time this action was file, Duran was a citizen of Texas. The Court finds that Duran either always maintained his domicile in Texas or replaced any domicile he once had in Arizona when he returned to Texas.

It is clear that Duran originally had a domicile in Texas and was a citizen of Texas for purposes of diversity jurisdiction. Duran is from Texas, he went to dental school there, and was licensed there until 2006. At that time, he was both physically present there and he intended to remain there indefinitely. Duran did not present sufficient evidence to convince the Court that he ever lost that domicile by acquiring a new one in Arizona or elsewhere. He did not provide information about when he moved to Arizona and could not provide the dates of when he began or ended work here. Although he was clearly physically present in Arizona for some period of time, none of the objective facts support the conclusion that he intended to remain here permanently or indefinitely. Duran's testimony about his intent is entitled to little weight because it is contradicted by the facts. Duran appears to have moved here to live and work, but then he moved back to Texas. He seems to have also spent time living and working in Utah but again he returned to Texas. During all this time he maintained his Texas driver license. For all but two-and-a-half years he maintained a Texas dental license.

Duran claims that he has been living in Arizona since either 2010 or 2011, but acknowledges that he owns a business in Texas and works there. He claims that he only

visits there a few days a month, but he provides no objective facts that prove where he has been living. His Arizona driver license was not issued until eight months after this suit was filed and so it provides no support for his claim and actually undermines it by indicating that he did not intend to remain in Arizona until the time he obtained the license. All of the contact addresses listed on the dental license site have been in Texas. All of the parties that had contact with him at the time before the lawsuit was filed believed he was living and working in Texas including his former Arizona employer, his malpractice insurer, and the attorney that represented his insurer and is now representing him. Despite what Duran argues in his briefs, the process server that looked for him in Arizona did not find any confirmation that he was actually living here, only rumors that he might be living at an unspecified location or was doing dental work out of the back of a store when he was in town.

Even if Duran lost his Texas domicile by establishing a domicile in Arizona, or Utah, he reestablished his Texas domicile by returning to work and live there indefinitely. The first element for establishing a domicile is physical presence. As just discussed, the first element was met because the objective facts show that Duran had returned to Texas and was physically present there.

The second element of domicile is the intent to remain in Texas. That is established by all of the same facts that establish that he was living there. He had a Texas driver license and a Texas dental license and had allowed his other dental licenses in Arizona and Utah to expire. Although Duran claimed that he was trying to retire, he acknowledged that he was still working as a dentist in Texas and that he owns a business there. He presented no objective facts that support an intent to remain in Arizona.

In summary, Duran either always retained his Texas domicile or reestablished it by the time this case was filed. The Blums presented sufficient evidence to carry their burden of establishing that Duran was domiciled in Texas at the time of the filing of this case. They provided evidence of his professional licenses, his place of business, and the location of his family, all of which indicate a Texas domicile. Duran was given an

1 adequate opportunity both in his briefs and at the hearing to show that those objective
2 factors were outweighed by other evidence but failed to do so. He submitted an Arizona
3 driver license and affidavit that establish, if anything, only his present location and
4 intentions rather than his location and intentions at the time the lawsuit was filed. Duran's
5 affidavit and testimony were inconsistent and vague and his assertions about living in
6 Arizona and intending to remain here were contradicted by all of the objective facts
7 discussed in this order.

8 The Motion to Dismiss is denied because, at the time of the filing of this action,
9 there was a complete diversity of citizenship between the Blums, who were citizens of
10 Arizona, and Duran, who was a citizen of Texas.

11 The Motion to Enforce the Federal Rules is essentially a sur-reply that additionally
12 alleges that Duran's attorney failed to send a copy of the reply to the Blums. Duran's
13 attorney filed a response with an affidavit stating that the reply was sent to the Blums.
14 Neither party raised the issue at the hearing. All parties are required to comply with the
15 Federal Rules of Civil Procedure but the Court finds no reason to issue an order to do so
16 and finds that the issue raised in the Motion to Enforce is now moot.

17 **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of
18 Subject Matter Jurisdiction (Doc. 34) is **denied**.

19 **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enforce Federal Rules of
20 Civil Procedure (Doc. 37) is **dismissed as moot**.

21 Dated this 20th day of March, 2014.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge